JOHN W. P. ABBOTT *vs.* WILLIAM BRADSTREET & others.

A bequest of the remainder after a life estate to the heirs at law of the testator will be construed as referring to those who are such at the time of his decease, unless a different intent is plainly manifested; and such intent is not to be inferred from the fact that those to whom the life estate is given are among his heirs at law, or that a bequest is given to another heir at law "in full of any share she may be entitled to out of my estate."

The decree of a judge of probate, allowing a trustee's account, after notice to all persons interested by publication in a newspaper of the county once a week for three weeks successively, if not appealed from, is conclusive, in the absence of fraud, as to the amount with which he is chargeable.

Reasonable costs of parties properly before the court to litigate a question as to the proper disposition of a remainder under a will, where the right was doubtful, will be allowed out of the estate.

BILL OF INTERPLEADER by the trustee under the will of Nathan Dexter, late of Westford, deceased, seeking the direction of this court as to the persons entitled to receive the amount of a fund held by him, at the expiration of the time limited for the continuance of the trust.

The will, which was executed on the 19th of July 1823, ordered the executor to sell all the testator's estate, of every description, and, after some special provisions which are immaterial here, provided as follows :

"*Fourth.* I give and bequeath to my granddaughter Sarah Dexter, child of my deceased daughter Sarah Dexter, eight dollars, which is to be in full of any share she may be entitled to out of my estate ; and also I give and bequeath to John Hammond Dexter, son of my deceased daughter Lois Dexter, twenty five dollars, to be in full of all claim or demand he may make or have against my estate.

"*Fifth.* . . . . My will is, that my said executor should invest the residue of the proceeds of the sale of all my estate, if he think

proper, in bank or other stocks, and pay one fifth part of the dividends on the nominal amount of said stocks to each of my children, to wit: Phebe Bradstreet, wife of Rev. Nathan Bradstreet, Esther Rose, wife of William Rose, to my son Nathan Dexter, Jr., to Nancy Dexter, and Samuel Dexter, to each one of whom I give and bequeath one fifth part of said dividends; or, in case my said executor cannot advantageously invest in stocks the residue of the proceeds of the sale of my estate as aforesaid, I give and bequeath to each one of my said children one fifth part of the interest accruing from such sale after the payments aforesaid; each child's proportion or share of said dividends or interest is to be paid to him or her annually, during the term of his or her natural life, by my said executor, or a trustee to be appointed as is hereinafter mentioned; and the payments to my said daughters are to be made to them alone, and their receipts therefor, independent of their husbands, are to be a full and effectual discharge for such payments to my said executor or said trustee : and on the death of any one of my said children, his or her share of said dividends or interest is to be paid as aforesaid, in equal parts, to my surviving children, and the whole of said dividends or interest to my last surviving child during his or her natural life, at whose decease the said fund is to go and descend to my heirs at law."

It was agreed that the testator died in 1832, and his will was duly proved. Only four of his children survived him, and the last one of these died in 1859. The surviving grandchildren of the testator, all of whom are joined as defendants in this bill, are William Bradstreet and Susan D. Thompson, children of Phebe Bradstreet, who died before her father; Sarah Dexter, now Sarah E. Parker; and John Hammond Dexter, now called John Hammond, who was an illegitimate son of Lois Dexter; and, with the exception of their own children, these were all the lineal descendants of the testator who were living at the death of his last surviving child.

The plaintiff presented an account as trustee to the probate court in 1860, which, after notice by publication in a newspaper

of the county once a week for three weeks successively, the last publication being three days at least before the day of the hearing upon it, was allowed, and no appeal was taken. Two of the defendants in this case, however, contended that he should respond for a larger sum than the balance exhibited by his account as allowed.

On these facts, it was agreed that the court should determine the rights of the respective parties claiming the fund, and that, if the decree of the probate court allowing the account was not conclusive, the question of the amount to be accounted for by the plaintiff should be referred to a master.

*S. A. Brown,* for the plaintiff.

*J. A. Cram,* for the defendant Parker.

*W. P. Webster,* for the defendants Bradstreet and Thompson.

*D. S. Richardson,* ( *G. F. Richardson* with him,) for the defendant Hammond. The legacy of $25 to this defendant was not intended to cut him off from any share to which he might be entitled in the remainder. The last surviving child having died in 1859, the fund then descended to the heirs at law of the testator; and, by *St.* 1851, *c.* 211, this defendant, though illegitimate, was an heir at law. The testator could not have intended that his children, who were his heirs at law, should take the remainder, because he provides that the remainder shall not descend until all his children are dead. The remainder is contingent until the death of the last surviving child, when it becomes vested. *Olney* v. *Hull,* 21 Pick. 311. *Rich* v. *Waters,* 22 Pick. 563. *Sears* v. *Russell,* 8 Gray, 86, 96.

HOAR, J. The rule is well settled, as a general rule of construction, that a bequest or devise to "heirs" or "heirs at law" of a testator, will be construed as referring to those who are such at the time of the testator's decease, unless a different intent is plainly manifested by the will. *Doe* v. *Lawson,* 3 East, 278. *Bird* v. *Luckie,* 8 Hare, 301. *Philps* v. *Evans,* 4 De Gex & Smale, 188. Where such an intent is plainly manifested, it will of course prevail. *Horn* v. *Coleman,* 1 Smale & Giff. 169, and 19 Eng. Law & Eq. R. 19. *Gundry* v. *Pinnigu,* 14 Beav. 94. *Tiffin* v. *Longman,* 15 Beav. 275. Where it is a remainder after

a life estate, it is regarded as a vested remainder, and the possession only is postponed. 2 Jarman on Wills, 52. This rule is a consequence of the preference which the law gives to vested over contingent remainders. A leading case, which has been repeatedly followed and cited with approbation, is *Holloway* v. *Holloway*, 5 Ves. 399; where a testator bequeathed £5000 in trust for his daughter for life, and after her decease for her children living at her decease, in such shares as she should appoint; and in case she should leave no child, then, as to £1000, in trust for the executors, administrators and assigns of the daughter; and as to £4000, the remainder, in trust for the person or persons who should be his heir or heirs at law. The daughter died without leaving children; and she and two other daughters were the testator's heirs at law. The master of the rolls held that the *prima facie* construction of the words, and their legal meaning, would be " heirs at law at the testator's own death; " and that he could *not*, upon the ground that the daughter was one of the heirs, conclude that heirs at a subsequent time were intended. The doctrine of this case was fully recognized in *Sears* v. *Russell*, 8 Gray, 86; although upon special circumstances the intent of the testator was there found to be a gift to those who were heirs at the time of distribution. And see *Dingley* v. *Dingley*, 5 Mass. 535; *Shattuck* v. *Stedman*, 2 Pick. 468; and *Bowers* v. *Porter*, 4 Pick. 198.

The case of *Rich* v. *Waters*, 22 Pick. 563, is apparently in conflict with the current of decisions. There the testator gave to his wife the use of thirty shares of bank stock; and directed that " said shares, at her decease, shall be divided equally between my heirs." This was held to be a contingent remainder; the court seeming to take it for granted, without discussion or citation of authorities, that the " heirs " intended were those who would be such at the time the remainder would become due and payable. Mr. Justice Putnam says : " We think the testator in the case at bar intended that the property should be distributed as an intestate estate after the decease of his wife; and whether Mrs. Waters will ever live to take any of it as an heir of the testator is wholly uncertain." But it would have

been equally uncertain, if the will had only given the estate for life, and had left the remainder to descend as intestate estate; and it is certainly no test to determine whether a remainder is vested or contingent, to find that the devisee may not live to the period of distribution or possession.

It has been held in some cases that, if there is a gift to a person for life, with remainder to the testator's next of kin, and the person taking the life estate is the sole next of kin at the death of the testator, the remainder will be considered as given to the persons answering the description at the termination of the estate for life. *Jones* v. *Colbeck*, 8 Ves. 38. *Long* v. *Blackal.*, 3 Ves. 486. And where the prior legatee, whose interest, on his death without issue, is divested in favor of the ulterior gift to the testator's next of kin, was one of such next of kin at the time of the testator's death, this has been deemed a sufficient ground for construing the words to mean next of kin at the happening of the contingency. *Butler* v. *Bushnell*, 3 Myl. & K. 232. But both these classes of cases are generally recognized as exceptional, and the construction adopted is usually strengthened by some special circumstances indicative of intention. *Briden* v. *Hewlett*, 2 Myl. & K. 90. Most of them are cases of a bequest over, upon failure of some prior object of the testator's bounty. No case has been cited, with the exception of *Rich* v. *Waters*, in which the remainder has been given directly to the testator's heirs, on the expiration of an estate for life or lives merely, and the expression has been held to import any other than heirs at the time of his death.

On the other hand, there have been a succession of decisions in which the doctrine of *Holloway* v. *Holloway*, has been approved and followed. *Rawlinson* v. *Wass*, 10 Eng. Law & Eq. R. 113. In *Nicholson* v. *Wilson*, 14 Sim. 549, the gift was to the testator's daughter Sarah for life, then to his other children, and, if all were dead, then to his personal representatives; and his daughter Sarah and the representatives of his other children were held to be entitled.

In *Seifferth* v. *Badham*, 9 Beav. 370, the testator created a trust for the benefit of his children from and after the decease or second marriage of his wife, and upon the death of all his

children without issue, then "to assign his personal estate unto and equally between his next of kin according to the statute of distributions." Lord Langdale held that the next of kin living at the testator's death were entitled to the ultimate gift, although they were his two children. *Urquhart* v. *Urquhart*, 13 Sim. 627, confirms this decision. In *Lasbury* v. *Newport*, 9 Beav. 376, a testator gave his residuary estate to one of his daughters for life, with remainder to her children, and in default, to his next of kin. It was held, that the class of next of kin was to be ascertained at the testator's death; and they were his two daughters, one of whom was the legatee for life. In *Ware* v. *Rowland*, 2 Phillips R. 635, a testator directed his executors to set apart a sum of stock to answer an annuity to be paid to his daughter, who was then his only surviving child, for her life, and on her death to divide the principal among her children, if she should leave any, on their attaining respectively the age of twenty four; if no child who should attain that age, to pay out of it two small legacies, "and all the rest and residue of the said principal fund he gave and bequeathed to and amongst his heirs at law, share and share alike;" and in another part of his will appointed his said daughter by name his general residuary legatee. Lord Cottenham held, confirming the decision of the vice chancellor, that as sole heiress at law and next of kin of the testator at the time of his death, she, and not his heir at law or next of kin at the time of her death, was nevertheless entitled to the fund set apart for the annuity, under the ultimate gift. He rests the case upon the authority of *Holloway* v. *Holloway*, and observes : " Suppose a testator, after making all such provisions as he was anxious about, finds that in certain events all these provisions might fail, and, having no other object in view, might naturally wish that the law, with respect to the disposition of his property, should take its course. If he so expressed his wish, his heir or next of kin would take in the event of the provisions failing; but as that might not take place until some distant period, it would be uncertain who would, at such time, stand in the place of such heirs ; and the testator might therefore very naturally express such wish in the terms used in this will."

These considerations apply with still greater force to the case at bar. The testator gives to a granddaughter, the child of a deceased daughter, $8, " which is to be in full of any share she may be entitled to out of my estate ; " and to the illegitimate son of another deceased daughter $25, " to be in full of all claim or demand he may make or have against my estate." He directs the sale of his real and personal estate by his executor, its investment in stocks or personal securities, and the payment of the income to his children, and the survivors or survivor of them, until the decease of the last surviving child, " at whose decease the said fund is to go and descend to my heirs at law." The words " go and descend " are significant, as indicating the wish of the testator that the remainder should be distributed as if it were intestate estate. He gives no direction to his executor respecting it, not even to pay it. If the executors could be considered as taking a fee by implication in the real estate, by reason of the power to sell and invest, they take nothing in the equitable estate beyond the lives of the children. We think the intent of the testator was to appropriate the income of his estate to the support of his surviving children so long as any of them should live, and that beyond that he had no purpose to make any testamentary disposition. The small legacy to the granddaughter was probably given to avoid the consequence which he feared might follow if nothing were given her in the will — a claim to take her mother's share as if he had died intestate. She comes within the description of the class to whom the remainder is bequeathed, and is not to be excluded unless by express words, or by necessary implication.

The direction given to the trustee will therefore be to pay the remainder of the estate in his hands to the heirs of the testator who were such at the time of his death, and their legal representatives. The account settled in the probate court is conclusive as to the amount with which the trustee is chargeable, in the absence of fraud ; and the reasonable costs of the litigant parties, to be taxed and allowed by the court, are to be paid out of the fund.                    *Decree accordingly.*