## KING v. WARE.

1. **Descent**: ESTATE IN LANDS: INHERITANCE FROM NON-RESIDENT ALIEN. G., a non-resident alien, in 1856 entered a tract of land in Iowa, receiving a patent therefor from the United States. In 1861 G. died, never having become a resident of the United States, and leaving two children who were residents of this State, and others who were non-resident aliens: *Held*, that G. took an estate of inheritance by his purchase from the United States, and that upon his death such estate vested in the children who were residents and citizens of this State, the others being incapable of inheriting lands in this State under sections 2488 and 2493 of the Revision.

*Appeal from Franklin Circuit Court.*

WEDNESDAY, MARCH 17.

THE plaintiff claims to be the owner of an undivided interest in 1,280 acres of land in Franklin county, and by his petition demands partition thereof. The defendant averred in substance that Asahel Gage entered and located the land about the 20th day of May, 1856, and that he died on or about July, 1861, seized of said premises, and without having made any

disposition thereof by will; that at the date of his death, and at all times prior thereto, said Asahel Gage was a non-resident alien, being a subject of Great Britain, residing in Canada West; that at the time of his death eight of his children were foreign aliens residing in Canada and subjects of Great Britain; that his two sons, James D. Gage and John M. Gage, were residents and citizens of this State, and upon the death of their father inherited the whole of said premises; that subsequently John M. Gage died, leaving his share of said real estate to his widow, Almira M. Gage; that about January 1, 1872, the defendant purchased said land of James D. Gage and Elmira M. Gage, and is, therefore, the owner in fee of the same.

It appears from the averments of the petition that the plaintiff claims title to an undivided interest in the land by virtue of a purchase from one of said children, which it is averred in the answer were non-resident aliens at the date of the death of Asahel Gage.

There was a demurrer to that count of the answer which set forth the above facts, upon the ground that it appeared therefrom that the defendant was not the owner of the whole of said land, but of an undivided interest therein. The demurrer was sustained. Defendant appeals.

*Shiras, Van Duzee & Henderson* and *McKenzie & Hemingway*, for appellant.

*King & Henley* and *Porter & Moir*, for appellee.

ROTHROCK, J.—I. The decisive question in this case is, was Asahel Gage seized of an estate in fee of the lands in controversy at the time of his death, or in other words did his purchase of the land from the United States invest him with the title thereto notwithstanding the fact that at the time of his purchase and ever afterward he was a non-resident alien? It is contended by appellant that notwithstanding the fact that

1. DESCENT: estate in lands : inheritance from non-resident alien.

a non-resident alien under the law then in force could not under the ordinary rule acquire and hold real estate in this State, yet the purchase of Gage invested him with an estate of inheritance because his title was derived directly from the United States by a patent which conveyed the premises to him, his heirs and assigns, and that the grant thus made from the United States to a non-resident alien could not have been defeated, nor the land escheated by the State.

The contention of the plaintiff is that Asahel Gage had no transmissible blood by reason of being a non-resident alien; that his property did not descend at his death, but was liable to escheat; that he could not become seized of an estate of inheritance by reason of his alienage, and that upon the taking effect of Chap. 193, Acts of Twelfth General Assembly, all disabilities appertaining to alienage were removed, and these lands never having been escheated by the State, the children of Gage inherited from him share and share alike, regardless of residence or alienage.

By the common law an alien cannot acquire or hold realty. In 1 Blackstone, Sec. 249, it is said: "And as they can neither hold by purchase nor by inheritance it is almost superfluous to say that they can have no heirs since they can have nothing for an heir to inherit." But this rule was not of universal application at common law, for it seems that if a purchase of real estate were made by an alien with the King's license, he might hold the same. Note to Sec. 249, 1 Blackstone. If he may purchase and hold real property, it would seem to follow that he could transmit the same to heirs, for having an estate of inheritance, it would not be liable to escheat by the crown or the State, but would descend to those legally entitled thereto the same as the property of the citizen, provided there be persons capable of inheriting as heirs.

Gage made his purchase from the United States, and held the lands by a patent duly issued to him. By an act of Congress approved March 3, 1845, and an act supplementary thereto approved on the same day, providing for the admis-

sion of the States of Iowa and Florida into the Union of States, it was provided that the said States should be admitted into the Union upon the express condition that they should provide by an ordinance irrevocable, without the consent of the United States, that said States should never "interfere with the primary disposal of the soil within the same by the United States, nor with any regulations Congress may find necessary for securing the title in such soil to the *bona fide* purchasers thereof." This proviso was accepted and approved by an act and ordinance of the General Assembly of this State, approved January 15, 1849. Revision of 1860, p. 981. By its terms the act is made irrevocable and unalterable. Under this compact the United States government has without the interference of the State disposed of the public lands by sale or by gift and grant, under the acts of Congress. Now, as the Federal Government recognized the right of Gage to purchase the lands in question, and received his money in payment therefor, and parted with its title thereto by its patent issued to him, which patent invested him with an estate of inheritance, it was not within the power of the State to question his title by escheating the lands, or nullifying the sale made by the United States in any other manner. We conclude, therefore, that Asahel Gage took an estate of inheritance by his purchase of the lands from the United States.

II.   Having determined that Gage was seized of an estate of inheritance in the lands, the only other question in the case is, who were his heirs. Gage died in 1861. Sections 2488–2493 of the Revision of 1860 were then in force. It has been held by this court in a number of cases that those sections did not confer upon aliens non-residents of the United States the capacity to inherit real estate. *Krogan v. Kinney,* 15 Iowa, 242; *Rheim v. Robbins,* 20 Id., 45; *Brown v. Pearson,* 41 Id., 481. It follows from the rule established by these cases that the children of Gage who always resided in Canada West, and were subjects of Great Britain, were

incapable of inheriting any interest in the lands in controversy; and that the two children who were residents and citizens of this State, and under whom the defendant claims, were the only heirs, so far as appears from the pleadings, and that upon the death of their father they inherited the whole of the said real estate. In our opinion the demurrer to the answer should have been overruled.

REVERSED.