CHARLES EASTON, *et al.*, Appellants, v. PELAGIE HUOTT,
*et al.*, Interveners.

**Descent and Distribution:** ALIENS. Chapter 85, Acts Twenty-second
General Assembly, provides "non-resident aliens cannot acquire
title to   *   *   *   or take land, *except that the*   *   *   *   *heirs of*
*aliens*   *   *   *   who have acquired lands may hold them for ten
years." *Held*, the heirs of an *alien*, whether the alien be resident
or not, may hold such lands for ten years though such heirs be
non-resident aliens.

*Appeal from Jefferson District Court.*—HON. H. C.
TRAVERSE, Judge.

SATURDAY, OCTOBER 5, 1895.

Action in equity to determine the ownership of certain real estate, and to have it partitioned. A petition of intervention was filed, to which the plaintiff demurred. The demurrer was overruled, and a decree was rendered in favor of the interveners. The plaintiffs appeal.—*Affirmed*.

*Jones & Fullen* for appellants.

*Wilson & Hinkle* for the interveners, appellees.

Robinson, J.—The facts admitted by the demurrer are substantially as follows: Xavier Huott was an alien, but a resident of Jefferson county, in this state. In March, 1870, he acquired the absolute title to one hundred and forty acres of land in that county; and in September, 1892, he died intestate, leaving a widow, but no children. Among his surviving relatives were a nephew, Charles Easton, and two nieces, Mary Fox and Jane Miller (all of whom are citizens of the United States and children of his sisters, now deceased), and three sisters, and a nephew who is the only surviving son and heir of a deceased brother, (all of whom are nonresident aliens and citizens of France.)

This action was brought by the nephew and nieces who are residents of the United States and the husbands of those nieces. They admit that the widow, who is made a party defendant, is entitled to an undivided one-half of the land, and claim that Easton is entitled to an undivided one-fourth, and Mrs. Fox and Mrs. Miller each to an undivided one-eighth, of the land; or, in other words, that the three are entitled to all of it which does not belong to the widow of the decedent. The sisters and nephew who reside in France filed a petition of intervention, in which they allege their relationship to the decedent, and aver that each is entitled to an undivided one-twelfth of the land.

The demurrer is founded upon the theory that, as the interveners are nonresident aliens, they cannot inherit any part of the land in question.

The correctness of the ruling upon the demurrer depends upon the force and effect to be given to chapter 85 of the Acts of the Twenty-second General Assembly. Section 1 of that act provides that "nonresident aliens are hereby prohibited from acquiring title to or taking or holding any lands or real estate in this state by descent, devise, purchase or otherwise only as hereinafter provided, except that the widow and heirs of aliens who have heretofore acquired lands in this state under the laws thereof may hold such lands by devise or descent for a period of ten years and no longer, and if at the end of such time herein limited such lands so acquired have not been sold to a bona fide purchaser for value or such alien heirs have not become residents of this state, such lands shall revert and escheat to the state of Iowa. * * * "The appellants contend that this act does not apply to resident aliens, and that the determination of this case is governed by the law as announced in *King v. Ware*, 53 Iowa, 97 [4 N. W. Rep. 858]. Some stress is also placed upon section 22 of article 1 of the constitution of this state. That provides that "foreigners who are or who may hereafter become residents of this state shall enjoy the same rights in respect to the possession, enjoyment and descent of property as native born citizens." We do not think that provision has any application to the controversy in this case. It applies only to foreigners who were at the time of its adoption, or who thereafter became, residents of this state. It is conceded by the parties to this action that the decedent acquired a perfect title to the land in question, and the controversy is solely over the right of nonresident aliens to inherit land situated in this state. In the case of *King v. Ware, supra*, the rule was recognized that in the absence of license, by statute or

otherwise, an alien cannot acquire or hold realty, and it was held that the nonresident alien children of a deceased alien, who was also a nonresident, could not inherit an interest in land in this state of which he died seized. But that decision was based upon sections 2488-2493 of the Revision of 1860, which have been held in several cases not to confer upon alien nonresidents of the United States the capacity to inherit real estate.

The claim of appellants that chapter 85 of the Acts of the Twenty-second General Assembly does not apply to resident aliens cannot be sustained to the extent claimed. It is true it refers to the right of nonresident aliens to acquire and hold real estate, but the clause, "except that the widow and heirs of aliens who have heretofore acquired lands in this state under the laws thereof may hold such lands by devise or descent for a period of ten years," refers to widows and heirs of aliens, without restriction as to the place of residence of the widows, the heirs, or the aliens. It is not material to the acquirement of title under that provision whether the widow and heirs are aliens or are nonresidents, or whether the deceased alien was a resident. If an alien, whether living here or in a foreign country, die seized of land situated in this state, his widow and heirs, wherever they may reside, and whether aliens or not, may take title to the land by devise or descent. The words "who have heretofore acquired land in this state" refer, not to the "widows and heirs," but to "aliens." The right is given to the widow and heirs of aliens to take title after the act took effect when the alien from whom they claim had acquired the title before the act took effect.

We conclude that the demurrer was properly overruled. The decree gave to each of the interveners an undivided one-twelfth of the land of which the intestate died seized for the period of ten years only, and provided for a supplemental decree in case the land was

not sold or the interveners did not become residents of this state within that time. The decree thus rendered appears to have been authorized by the admitted facts of the case and the law applicable thereto, and it is *affirmed*.