JAMES BURROW v. JOHN BURROW, *et al.*, Appellants.

**Aliens:** ESTATES OF DECEDENTS: *Construction of statute.* Under Acts Twenty-second General Assembly, chapter 85, section 1, prohibiting non-resident aliens from acquiring title to, or taking, or holding lands in this state by devise, descent, purchase, or otherwise, only as thereinafter provided, and section 2, providing that a non-resident alien may *acquire* and hold real estate if, within five years from the *date of purchase*, the same is placed in the actual possession of a relative of such purchaser, related within the third degree, non-resident aliens can acquire and hold lands by purchase only, and not by descent.[*]

*Appeal from Sac District Court.*—HON. Z. A. CHURCH, Judge.

THURSDAY, MAY 21, 1896.

SUIT in equity, to quiet the title to certain land in Sac county, in plaintiff. A demurrer to the defendants' answer was sustained, and the defendants appeal.—*Affirmed.*

*Chas. D. Goldsmith* for appellants.

*James H. Tait* and *W. A. Helsell* for appellee.

NOTE.—For note on the effect of constitutions and statutes upon inheritance by or from aliens, see *Beavan v. Went* (Ill.) 31 L. R. A. 85.

[*]Act 25 G. A., ch. 82, laws of 1894, while passed too late to apply to this case, permits aliens to take by descent.—REPORTER.

DEEMER, J.—The plaintiff claims title to the land in controversy by descent from and through his brother, one Henry Burrow. It appears that plaintiff's parents, Daniel and Jane Burrow, were at all times prior to their death, which occurred long prior to the year 1890, residents and subjects of the kingdom of Great Britain; that the defendants are also children or heirs at law of the said Burrows, deceased; and that they are now, and at all times have been, non-resident aliens. Henry Burrow, a brother of the plaintiff, died unmarried and intestate on the sixth day of June, 1894, seized of the land in dispute. At the time of his death he was a naturalized citizen of this country. The defendants claim title to the land by descent from and through their parents and Henry Burrow, and they allege that, immediately upon his death, they took possession of the premises in controversy by their agent and relative, James Brock, he being related to all the defendants within the third degree of kindred, and that he has ever since been in the occupation thereof, and has declared his intention of becoming a naturalized citizen of the United States. The effect of the ruling upon the demurrer was to deny to defendants any interest in or title to the lands.

Under the Code of 1873, sections 1908, 1909, aliens, whether they resided in this or any foreign country, might acquire, hold, and enjoy property, and convey, devise, mortgage or otherwise incumber the same, in like manner and with the same effect as citizens of the state. The Twenty-second General Assembly, however, changed this law, and provided that "non-resident aliens * * * are hereby prohibited from acquiring title to, or taking, or holding, any lands or real estate in this state, by descent, devise, purchase or otherwise, only as hereinafter provided. * * * Any non-resident alien may acquire and

hold real property to the extent of three hundred and twenty (320) acres, * * * providing that within five years from the date of purchase of said property, the same is placed in the actual possession of a relative of such purchaser, the occupant being related to such owner within the third degree of kindred. * * * And further provided that such occupant become a naturalized citizen within ten years from the purchase of said property as aforesaid." Acts Twenty-second General Assembly, chapter 85, sections 1, 2. This was the law in force at the time of the death of Henry Burrow, and we are to determine whether the defendants have title to the land by virtue of the provisions above quoted. It will be seen that the general rule is that non-resident aliens are prohibited from acquiring title to, or holding lands by any means whatever. There is an exception which provides, in substance, that they may acquire and hold real estate, provided that, within five years from the time they purchase it, they take actual possession thereof, through a relative, within the prescribed degree of kinship. Appellants contend that they are within this exception; that it is immaterial how they acquired the land, provided they placed the same in the possession of a relative, within the prescribed degree of kinship, within five years from the time of its acquisition, and otherwise complied with the statute.

This question has never been directly decided by this court. In the case of *Furenes v. Mickleson*, 86 Iowa, 508 (53 N. W. Rep. 416), we held that a resident whose father was a non-resident alien could not inherit through his father's brother, who was a resident of the state, since he would derive his title mediately, through his father, and not immediately through his uncle. And that by reason of the provisions of the act of the Twenty-second General Assembly, before quoted, the resident derived no title

to the land in dispute. And in the case of *Bennett v. Hibbert*, 88 Iowa, 154 (55 N. W. Rep. 93), we held that a devise of real estate was a "purchase," as that term is used in the exception to the general rule stated in the acts of the legislature before quoted. While the question presented by this appeal was not necessarily involved in the case last cited, yet much that is there said is applicable here. In construing the words "acquire" and "purchase," as used in the exceptive clauses of the statute, we said, "We limit the word 'acquire' by the proviso to what is in law a purchase, without which it would embrace the whole range of acquisitions, which includes all methods." It is apparent that, if the construction appellants would have us adopt in this case be the true one, that much of what is said in the last opinion cited, is useless, for if the word "acquire," as used in the statute relied upon, means any kind of acquisition, then it was entirely unnecessary to determine whether the word should be limited by the terms "purchase" or "purchaser," found in the same section of the statute. But let us look to some of the rules laid down for the interpretation of statutes. It is our purpose to arrive, as nearly as may be, at the intent of the legislature in enacting this statute; for this is the leading, if not the only, object to be inquired into by courts. In arriving at this intention, the language of the act, and the particular words used, must be construed with reference to their connection, and the purpose and object in view in enacting the statute. We have seen that, before the passage of the act in question, non-resident aliens had the same right to acquire, hold, and enjoy property, as citizens of this state. The policy of this law was questioned, and hence followed the repeal of sections 1908 and 1909, of the Code of 1873, and the enactment of the alien law by the Twenty-second General Assembly, absolutely prohibiting non-resident aliens from acquiring

real estate in Iowa, save as permitted thereby. The act is entitled, "An act restricting non-resident aliens in their right to acquire and hold real estate," etc. The act not only prohibits them from "acquiring" title to land, but also disqualifies them from "holding" or "taking" title to any Iowa real estate. Under section 2 of the act, a non-resident alien may "acquire and hold" three hundred and twenty acres of land, provided that, within five years from the date of *purchase,* it is placed in the possession of a relative of such *purchaser;* such occupant to become a citizen within ten years from the *purchase.* We are then brought to the question as to how the non-resident alien must *acquire* the land, in order to hold it under the proviso of the statute. Must he be a purchaser, or may he hold when he takes by descent? It is a general rule of construction that a proviso will not enlarge, but rather restrain, qualify, or explain, the clause to which it refers. It seems to follow, then, that when the statute permits an alien to acquire real estate,—not to take it,—providing that within five years from the date of "purchase" it is placed in the possession of a relative of "such purchaser," who is to become a naturalized citizen within ten years from the *purchase,* the mode of acquisition is restricted to that of purchase, and cannot be enlarged to embrace descent. Construing the whole act together, it is manifest that this was the intention of the legislature. Any other interpretation of the language used would largely moderate, if not entirely destroy, the force and effect of the language used in the first section of the act. Again, under the common law, a non-resident alien could acquire property by purchase, grant, or devise, but he could not take by descent. *King v. Ware,* 53 Iowa, 97 (4 N. W. Rep. 858); *Brown v. Pearson,* 41 Iowa, 481. Now, it was evidently the intention of the legislature to take away from these persons the right to acquire or hold land

by purchase or descent, except upon certain conditions mentioned in the act. It certainly was not its purpose to give to non-resident aliens greater rights than they had at common law, and allow them to take by descent. Moreover, we have a legislative construction of the acts under consideration. The Twenty-fifth General Assembly passed an act (chapter 82, Laws 1894) which permitted non-resident alien heirs of naturalized citizens to take by descent, and to hold the same for the period of ten years, at the end of which time, if the lands were not sold, they escheated to the state. If the construction contended for by appellants is correct, there was no need for this additional legislation. It is evident that the legislature did not understand the act under consideration to mean what appellants now contend that it does. We are united in the conclusion that the appellants cannot take the lands by descent, and the decree of the district court is AFFIRMED.