MARY E. MITCHELL, ANNIE E. CLARK and Others, Appellants, v. F. E. VEST and ADDIE VEST and MARY E. MITCHELL and Others, Appellants, v. JAMES McDONALD and Others, and MARY E. MITCHELL and Others, Appellants, v. J. F. EWING and Others, MARY E. MITCHELL and Others, Appellants, v. C. H. TAYLOR and Others, Heirs of WILLIAM EMSLIE, deceased, Appellants, v. S. A. HUNTER and Others, Heirs of WILLIAM EMSLIE, deceased, Appellants, v. W. C. McKEE and Others, and J. W. CARR, Executor, v. ANNA E. CLARK and Others, Appellants.

**Wills:** ELECTION BY WIDOW. A will bequeathing one-half of all testator's estate to his widow in fee and the other half to her for life, with the provision that whatever remained at her death of the one-half given her for life should go to the heirs of the testator, gave the wife a life estate in the remaining one-half and left nothing from which she could take a distributive share; and she was required to elect whether she would take under the will or the statute.

**Same.** The final report of the widow as executrix under the will of her husband, giving her one-half the estate in fee and the other half for life, which showed the probate of the will, full settlement of the estate, and that she was in possession of all the property, was a sufficient election to take under the will.

**Same:** DEVISE: HEIRS: NONRESIDENT ALIENS. Nonresident aliens can not acquire real property under a will devising the same to the legal heirs of the testator; as the legal heir of another must have inheritable blood, and the statutes of this state prohibit such aliens from taking the property of testator, either by descent or devise.

**Same:** REMAINDER: WHEN VESTED. A will bequeathing a life estate to the widow and whatever may remain to the legal heirs of the testator, vests the remainder in those heirs qualified to take the property at the time of the testator's death; it is only the enjoyment that is postponed.

**Acknowledgment of instruments:** QUALIFICATION OF NOTARY. An attorney for the mortgagee in foreclosure proceedings has no such interest in the matter as will disqualify him from taking the acknowledgment of the sheriff's deed, and thus render the same invalid.

**Co-tenants:** OUSTER: ADVERSE POSSESSION. Ordinarily a tenant in common can not hold adversely to his co-tenant, or a life tenant to the remaindermen; but this rule only applies where the relationship is continuous. So that where a life tenant foreclosed a mortgage which she held upon the property and acquired a sheriff's deed, the remaindermen having knowledge of the proceedings, and thereafter claimed to hold the property under color of the sheriff's deed, there was a sufficient ouster to set the statute of limitations in motion.

**Wills:** ELECTION: SATISFACTION OF DEBT TO LEGATEE. Under a will giving the widow one-half the property in fee and the remainder for life, the interest under the will being less in value than the amount of a valid mortgage held by her on the property, she was not put to an election; and as the will provided for the payment of all just debts, the doctrine of satisfaction of the mortgage has no application, as that question arises only where the legacy is equal to or greater than the debt.

**Former adjudication.** To constitute a former adjudication there must be an identity of subject matter, cause, parties and of quality of the persons: Thus in an action by remaindermen against those claiming under the life tenant who foreclosed a mortgage on the property and held it adversely for the statutory period, the judgment between the plaintiffs and a third person in the partition of other land owned by plaintiff's testator was not an adjudication of plaintiff's rights in this action.

*Appeal from Poweshiek District Court.*—HON. W. G. CLEMENTS, Judge.

TUESDAY, JUNE 25, 1912.

THE opinion gives the facts and issues.—*Affirmed.*

*J. M. Goodson,* for appellants.

*Talbott & Talbott* and *J. W. Carr,* for appellees.

SHERWIN, C. J.—William Emslie died in 1893, the owner of the lands in controversy. He left surviving him his widow, Mary S. Emslie, and six brothers and sisters, but no issue. Of these brothers and sisters but two, George Emslie and Annie E. Clark, were residents of the United States. The others were aliens residing in England and Wales. Annie E. Clark and Mary E. Mitchell are the two surviving sisters of William Emslie; the other brothers and sisters having died before the commencement of these actions. The plaintiffs herein, other than Mary E. Mitchell and Annie E. Clark, are the heirs of these deceased brothers and sisters. William Emslie left a will as follows:

First. I direct that all my just debts, including funeral expenses, be paid as soon after my decease as can be done without injury to my estate.

Second. I give, devise and bequeath unto my beloved wife, Mary S. Emslie, one-half of all my estate, both real and personal, absolutely and in fee simple. And I also give, bequeath and devise unto my said wife Mary S. Emslie, the use, rents and profits, control and enjoyment of the other one-half of all my estate both real and personal for and during her natural life.

Third. At the death of my said wife, Mary S. Emslie, I give what may be then remaining of one-half of my estate to my legal heirs.

Fourth. I hereby revoke all former wills by me at any time made.

Fifth. I hereby nominate and appoint my beloved wife, Mary S. Emslie, sole executrix of this my will and request the court to confirm her appointment without bond.

This will was duly admitted to probate. The widow, Mary S. Emslie, was appointed executrix thereof without bond, entered into possession of the property, and continued such possession until her death in 1903. She left a will naming J. W. Carr as executor of her estate and authorizing him to sell all of her property, both real and personal, and directing him to pay from the proceeds thereof the legacies and bequests provided for therein. Carr qualified as

executor, and in due time sold the land in question herein, as such executor. These actions were brought in 1908 and 1909 against the parties who purchased from J. W. Carr, as executor of the estate of Mary S. Emslie, to recover an undivided one-half interest in and to the lands and to quiet the title thereto. In the several actions, the appellants claim to be the owners of an undivided one-half interest in the lands as devisees under the will of William Emslie. Several defenses were interposed, which we shall further notice in the course of the opinion. The court found against the appellants in all of the cases.

I. There is no question but what the will of William Emslie gave to his wife one half of his estate in fee, and a life estate in the other half thereof. The controversy be-

1. WILLS: election by widow.

tween the parties on this branch of the case is whether the widow was entitled to a distributive share of the land in question under the statute, in addition to that given her by the will. We think it clear that the widow was not entitled to and did not take a distributive share under the law. The third clause of the will expressly provided that, at the death of the widow, whatever remained of the one-half of the estate given to her for life should go to the heirs of the testator. This was an explicit direction that the remainder of the life estate given to his widow should, after her death, be given to his legal heirs. The life estate that had already been given to the widow was one-half of the whole estate, and not what remained of such one-half after her distributive share had been taken therefrom, and this disposition of the remainder of the life estate would leave nothing from which the distributive share could be taken, and required an election on the part of the widow whether she would take under the will or under the statute. *Parker v. Parker,* 129 Iowa, 600; *Snyder v. Miller,* 67 Iowa, 261; *Mohn v. Mohn,* 148 Iowa, 288; *Warner v. Hamill,* 134 Iowa, 279.

That she elected to take under the will can not be

seriously questioned. In December, 1896, she filed a final report as executrix, in which she stated that William Emslie left a will in which he gave her one-half of all his estate absolutely "and the other half thereof to her for and during her lifetime, giving her full custody and control thereof, which said will was . . . duly admitted to probate, and is now on file in the office of the clerk of this court, to which reference is made." She further stated in her report that she had paid all costs and charges against said estate; that the estate was fully settled; and that she, as sole legatee named in the will, was in possession of all, and singular, the estate of said William Emslie, remaining after the payment of the debts and charges against said estate. This report was duly recorded, and under our decisions constituted an election to take under the will rather than under the statute. *Mohn v. Mohn, supra; Craig v. Conover,* 80 Iowa, 355; *In re Franke's Estate,* 97 Iowa, 704.

*2. SAME.*

II. At the time of his death, William Emslie, his brother, George Emslie, and his sister, Annie E. Clark, were citizens of the United States. William Emslie's other brothers and sisters were at the time nonresident aliens. The plaintiffs, William M. Emslie, D. F. A. Emslie, Jane Cook, Orpha Emslie, Agness Williams and Anna Holmes are the children of George Emslie, deceased. All of the other plaintiffs, except Annie E. Clark, are children of the now deceased alien brothers and sisters. The appellees contend that the alien brothers and sisters of William Emslie could not, and hence did not, take anything under the will of William Emslie, because they were not his legal heirs at the time of his death, and therefore not of the class to whom he devised the remainder of the one-half of his estate. Chapter 85, Acts of the Twenty-Second General Assembly, was in force at that time, which provided as follows so far as material here: "Section 1. Nonresident

*3. SAME: devise: heirs: nonresident aliens.*

aliens . . . are prohibited from acquiring title to or taking or holding any lands or real estate in this state by descent, devise, purchase, or otherwise, only as hereinafter provided." Section 2 of the act provided that any nonresident might acquire and hold certain real property on condition that, within a certain time from the date of its purchase, he place the same in the actual possession of a relation who shall comply with certain other conditions named in the act.

In *Bennett v. Hibbert*, 88 Iowa, 154, the will under consideration devised to the defendant Hibbert, who was a nonresident alien, certain lands as the remainder of the testator's estate. The question was there presented whether he could take under the provisions of chapter 85, Acts of the Twenty-Second General Assembly. It was held that Hibbert could take under the will, because he was a purchaser within the meaning of the second section of the act. While the alien brothers and sisters of William Emslie would take, if at all, as devisees under the will, they could only take as such devisees by showing that they were his legal heirs at the time of his death, for the devise is expressly limited to such heirs. His brother George Emslie, and his sister Annie E. Clark, were legal heirs, because they were citizens. But the nonresident alien brothers and sisters were not legal heirs of the testator for the reason that the statute prohibited their taking by descent under the law. In *Opel v. Shoup*, 100 Iowa, 407, it was held that section 1 of the act under consideration prohibited the descent of property to nonresident aliens, and that such aliens were not heirs who could inherit property in this state. We also held, in *Burrow v. Burrow*, 98 Iowa, 400, that a nonresident alien could not take by descent. And see, also, *Furenes v. Mickelson*, 86 Iowa, 508; *King v. Ware*, 53 Iowa, 97; *Brown v. Pearson*, 41 Iowa, 481.

To constitute one the legal heir of another, he must have inheritable blood. 2 Blackstone, 249. And where

the Legislature of the state where the real property is sit-
uated has declared that nonresident aliens shall not take
by descent, there is clearly no inheritable blood in such
alien.   The will was made shortly before the testator's
death, when the act of the Twenty-Second General As-
sembly was in force, and it is to be presumed that the term
"legal heirs" was used for a purpose.   The testator's
brother George, and his sister Annie E. Clark, were heirs
who could take upon his death, and we think it must be
held that they alone took under the will, and, if that be
true, only Annie E. Clark and the heirs of George Emslie
can have any possible interest in the land in question.

  To avoid the effect of the act of the Twenty-Second
General Assembly and our decisions thereunder, the appel-
lants urge that nonresident aliens were protected by a treaty

4. SAME:
   remainder:
   when vested.

between the United States and Great Bri-
tain, which became effective in 1900, and
this claim is made on the theory, as we
understand the argument, that no title in the remainder
of the estate vested in the remaindermen until the death
of Mary S. Emslie, which was in 1903.   The will
says: "I give what may be then remaining of one-
half of my estate to my legal heirs."   We think the unused
portion of the remainder vested in the heirs of the testator
immediately upon his death.   The language clearly indi-
cates the intent to have the gift become complete upon the
death of the testator, and that the enjoyment of it was alone
postponed.   Generally speaking, an "heir" is he upon whom
the law casts the estate immediately upon the death of the
testator.   *Johnson v. Bodine,* 108 Iowa, 594.   And unless
the will itself clearly indicates the intent of the testator
to postpone the vesting of the interest, it will vest at once
upon his death.   A direction for a division among the tes-
tator's legal heirs refers to the persons answering that de-
scription at the time of his death, unless a contrary intent
is plainly manifested by his will.   *Johnson v. Bodine,*

*supra; Blackman v. Wadsworth,* 65 Iowa, 80; *Clark v. Shawen,* 190 Ill. 47 (60 N. E. 116); *Burton v. Gagnon,* 180 Ill. 345 (54 N. E. 279); *Abbott v. Bradstreet,* 85 Mass. 587; *Minot v. Tappan,* 122 Mass. 535. In *Westcott v. Meeker,* 144 Iowa, 311, relied upon by the appellants, the remainder was to go to the heirs of a son of the testator after the son's estate had ceased, and the heirs of such son, who were claiming under the will, were not born when the will was executed nor when the testator died. In that case, there was uncertainty as to who the heirs of the son might be, while here no such uncertainty existed. The only uncertainty in this case was as to the amount that would eventually go to the remaindermen. Whatever the amount be, it vested in the remaindermen at the same moment that the widow's interest under the will vested in her.

III. In 1894, after Mary S. Emslie had qualified as executrix of the estate and had taken possession thereof, she brought an action in equity in her own name against herself as executrix and against George Emslie, Annie Clark and the nonresident alien brothers and sisters of William Emslie, in which she asked the foreclosure of a mortgage given to her by her husband, William Emslie, to secure his note to her of about $10,000, which mortgage seems to have included practically all of the real estate in controversy in this action. George Emslie and Annie E. Clark were personally served with notice of such suit and made default. The nonresident alien defendants were served by publication and made no appearance. There was a decree of foreclosure in November, 1894, and the land was soon thereafter sold under special execution and bid in by Mary S. Emslie, and she subsequently obtained a sheriff's deed therefor. The suggestion of the appellants that the sheriff's deed was invalid, because the acknowledgment was taken by Mrs. Emslie's attorney, is without support

5. ACKNOWLEDGMENT OF INSTRUMENTS: qualification of notary.

in the authorities cited. The attorney clearly had no such interest in the matter as would disqualify him.

The appellants contend that Mary S. Emslie entered into possession of the property in controversy under and by virtue of the will of her husband, and became thereby a tenant in common and remained such during her lifetime; that, as such tenant in common, she could obtain no title adverse to the appellants; and, further, that because she was the executrix under the will, she could acquire no title adverse to them; that, as a life tenant, she was bound to protect the property by taking care of the incumbrances thereon; and that if any debt existed in her favor, which she had the right to enforce, it was satisfied by the legacy given and accepted by her under the will of her husband. The appellees concede that a life tenant or a tenant in common can not ordinarily hold adversely to the remainderman or cotenant, but they say that this rule is applicable only where such relationship is continuous and uninterrupted and does not apply where there has been an ouster or disseisin, followed by adverse possession under color of title or claim of right for the statutory period. This exception to the general rule is well recognized, and, where the cotenant or remainderman has knowledge of the character of the possession and of the claim of exclusive ownership, it amounts to an ouster and sets the statute in motion. Freeman on Cotenancy, sections 221, 235, 373; 1 Cyc. 1072, 1076; *Murray v. Quigley,* 119 Iowa, 6; *Crawford v. Meis,* 123 Iowa, 610; *McCarthy v. Colton,* 134 Iowa, 658.

It is conceded that George Emslie and Annie E. Clark had actual knowledge of the fact that Mary S. Emslie had foreclosed the mortgage which she held against her husband, William Emslie, and that said Mary S. Emslie, after receiving the sheriff's deed, was claiming to be the absolute owner of all of the real estate covered by said mortgage, and that she continued to make such claim as long as she

6. COTENANTS: ouster: adverse possession.

lived. The sheriff's deed was sufficient to give color of title to the hostile acts of Mary S. Emslie, and the subsequent acts of her executor in conveying all of said land, and in thereafter bringing suit to quiet title thereto, was all notice to interested parties that any and all claims of cotenants or remaindermen had long since been repudiated. Annie E. Clark and the plaintiff heirs of George Emslie are clearly barred under the rule of the cases cited.

Appellants say that Mary S. Emslie could not acquire title by deed against them because she was the executrix of the estate of her husband, but their position is no stronger under such claim than under the claim of cotenancy. She held a valid claim against the estate, and there is no claim of fraud in connection therewith. She took it into court and secured an adjudication that it was a valid and subsisting debt of the estate. There was no personal liability for this debt; all that she could do was to hold the estate or the security provided in the mortgage, for she could not compel contribution on the part of appellants. Moreover, appellants have never offered to contribute toward the payment of this just claim, and they do not now offer to do so. The contention of the appellants that, because Mary S. Emslie accepted under the will, she renounced every right inconsistent with its provisions and was estopped to assert any right under the mortgage, is not sound under the facts in this case. There was, in our judgment, no inconsistency here. The note and mortgage were not specifically disposed of by the will, and at the death of the testator they remained the separate property of Mary S. Emslie and a valid and subsisting claim against the estate. The note was negotiable, and no claim can be made that she might not have sold it without in any way affecting her rights under the will, and if it might, under such circumstances, have been enforced by the purchaser thereof, we see no reason why Mary S. Emslie was put to any election. The

7. WILLS: election: satisfaction of debt to legatee.

will expressly provided that all debts of the testator be first paid from his estate, and no exception was made of the debt which he owed his wife. The doctrine of satisfaction, as applied to cases arising under wills, can ordinarily be applied only when the legacy given by the debtor to the creditor is equal to or greater in amount than the debt, and it must be not only equal in amount, but equally beneficial, and of the same nature exactly. Bispham's Principles of Equity (6th Ed.) section 538.

The doctrine rests on the presumption, under the circumstances stated, that the legacy was intended as a satisfaction of the debt. Such presumptions are not favored by equity, however, and it is the general rule that slight circumstances will rebut them. Thus it has been held that a direction in the will for the payment of debts rebuts the presumption. *Chauncey's Case,* 1 P. Wms. 408; *Strong v. Williams,* 12 Mass. 391 (7 Am. Dec. 81); *Wesco's Appeal,* 52 Pa. 195; *Van Riper v. Van Riper,* 2 N. J. Eq. 1; Story's Equity, sections 1104, 1119, 1123. And where the legacy was less than the amount of the debt, or is of a different nature, the same rule is applied. See cases *supra.* In addition to the fact that the will expressly provides for the payment of all just debts, it fairly appears from the record before us that the legacy here was much less than the debt.

IV. In 1905, one H. P. Johnson brought an action of partition against some of the Emslie heirs and secured a decree therein. The action did not relate to or involve any of the land in controversy in this suit; but the appellants claim that it was nevertheless an adjudication as to this land. This can not be so for several reasons. The issues were not the same, the parties were not the same, and the land involved therein was not a part of the land mortgaged to Mary S. Emslie. There is neither identity of subject matter, identity of cause, identity of persons or of

8. FORMER
   ADJUDICATION.

parties, nor identity of the quality of the persons, all of which are required. *Woodward v. Jackson,* 85 Iowa, 432; *In re Dille,* 119 Iowa, 575; 21 Am. & Eng. Enc. 227.

Other matters are discussed by the appellants, but what we have already said disposes of the controlling questions, and we need not extend this opinion. For the reasons stated, the judgment of the trial court should be and it is, —*Affirmed.*