IN RE ESTATE OF MAY HILL.

FLORENCE GRAVES, Claimant, Appellant, v. W. N. GRAVES, Executor; C. N. WOOD et al., Objectors, Appellees (and one other case).

No. 44917.

April 8, 1941.

Roy E. Havens and J. J. Hess, for appellant.

Michael Murray, for appellee, W. N. Graves, executor.

Walter I. Wolfe and Miller, Hines & Higgins, for appellees, C. N. Wood et al., objectors.

STIGER, J.—A rehearing was granted objectors, appellees, and the case is before us on the resubmission. We reach the same result as the original opinion found in 289 N. W. 754. Because of the issues presented by objectors on resubmission, it is necessary to withdraw the original opinion.

Florence Graves and Florence Graves as assignee of W. N. Graves will be referred to as appellant. Mrs. Hill died in December 1930. Appellant Florence Graves claims that in 1921 she and her husband, W. N. Graves, entered into separate express contracts with Mrs. Hill for performance of services for her benefit.

I. Appellant claims the court erred in giving instruction No. 7. One of the defenses to the claims is that W. N. Graves gave to decedent two notes which, objectors contend, constituted a mutual settlement and compromise of all indebtedness between the claimants and decedent. This defense is based on the rule that the execution and delivery of a promissory note is prima facie evidence of settlement of all existing demands between the

parties to the date of the note. In re Estate of Kahl, 210 Iowa 903, 232 N. W. 133.

After referring to the notes and stating the rule as to the presumption arising from the giving of a note, the court said in instruction No. 7:

"This presumption, however, is not conclusive, but is simply prima facie evidence of a mutual settlement between the giver and the receiver of such note, *and in such case the burden of proof is upon the claimant to show by the greater weight or the preponderance of the evidence that there was no mutual settlement at said time, and in this case the claimant assignee herein must establish the claim that there was no mutual settlement at the time of the giving of said notes.* As above stated, such presumption is not conclusive, but may be rebutted by the showing of facts and circumstances and by any just and fair inferences to be drawn therefrom.

"In this case it will be for you to say from the evidence whether the claimant has shown sufficient facts and circumstances to overcome such presumption. *If the evidence before you fails to show that there was no settlement between May Hill and W. N. Graves at the time of the giving of the note or notes to the said May Hill, then the claimant cannot recover and your verdict should be for the objectors.*" (Italics supplied.)

Appellant objects especially to the italicized portion of the instruction and contends that it erroneously placed the burden on claimants of proving by a preponderance of the evidence that there was no mutual settlement and constituted reversible error. We agree with appellant's contention. The burden of proving the defense by a preponderance of the evidence remained at all times on the objectors. After they had established the presumption of settlement by introducing the notes, the sole burden of claimants was to meet the inconclusive presumption by introducing evidence of sufficient weight to place the evidence on the issue in equipoise. Gibbs v. Bank, 123 Iowa 736, 99 N. W. 703.

II. Another assignment by appellant is that the court erred in giving instruction No. 8. Objectors interposed the defense to the claims that the will of May Hill bequeathed a legacy to each claimant in an amount greater than the respective claims

and that such legacy satisfied and compensated claimants for the services for which compensation is sought.

The material portions of the will read:

"First.

"It is my wish that all of my just debts and funeral expenses be first paid out of my estate.

\* \* \*

"Fifth.

"I give, devise and bequeath to W. N. Graves and Florence Graves, his wife; C. N. Wood and May Wood, his wife, all of the money and personal property of every kind and nature of which I may die seized except the household goods and Government Bonds hereinbefore disposed of, after paying my just debts, to be divided equally between said four persons;" etc.

Instruction No. 8 states in part:

"You are instructed that the will of May Hill which is an exhibit before you, provides that all her debts be first paid from her estate, and no exception is made as to any particular debt which the said May Hill may have been owing at the time of her death.

"You are instructed that where a will by a debtor gives a creditor of the maker of said will a legacy equal to or in a greater amount than the debt and equally beneficial and of the same nature exactly, the law then presumes that such legacy was intended to satisfy such debt. Such presumption, however, is not conclusive, and as a general rule slight circumstances will rebut such presumption. If it should happen that the legacy given by such will is of a different nature from the debt, the presumption will not apply."

The instruction then left for the determination of the jury the question whether Mrs. Hill intended the legacy to claimants to be in satisfaction of their claims for services.

Objectors invoke the rule that if a legacy given a creditor is equal to or greater in amount than the debt it will be presumed, in the absence of a contrary intention, that the testator intended the legacy to be a satisfaction of the debt. This rule is one of construction only and the intention of the testator is controlling.

There are several situations which prevent the operation of the rule, among which are: (1) A direction in the will for payment of debts, (2) an unliquidated indebtedness, (3) an indebtedness contracted after making the will.

In Mitchell v. Vest, 157 Iowa 336, 136 N. W. 1054, the opinion states on page 346 of 157 Iowa, page 1057 of 136 N. W.:

"The doctrine of satisfaction, as applied to cases arising under wills, can ordinarily be applied only when the legacy given by the debtor to the creditor is equal to or greater in amount than the debt, and it must be not only equal in amount, but equally beneficial, and of the same nature exactly. Bispham's Principles of Equity (6th Ed.) section 538.

"The doctrine rests on the presumption, under the circumstances stated, that the legacy was intended as a satisfaction of the debt. Such presumptions are not favored by equity, however, and it is the general rule that slight circumstances will rebut them. Thus it has been held that a direction in the will for the payment of debts rebuts the presumption. Chauncey's Case, 1 P. Wms. 408; Strong v. Williams, 12 Mass. 391 (7 Am. Dec. 81); Wesco's Appeal, 52 Pa. 195; Van Riper v. Van Riper, 2 N. J. Eq. 1; Story's Equity, sections 1104, 1119, 1123. And where the legacy was less than the amount of the debt, or is of a different nature, the same rule is applied. See cases supra. In addition to the fact that the will expressly provides for the payment of all just debts, it fairly appears from the record before us that the legacy here was much less than the debt."

In Allen v. Etter, 92 Ind. App. 297, at page 307, 175 N. E. 286, at page 289, it is stated:

"Where, as in this case, the amount of the debt sued on is unliquidated, or is an open and running account, a bequest to such creditor will not be presumed to be a satisfaction of the debt or any part thereof. This is particularly true where the amount of the legacy is less than the amount due the legatee from the testator. If there is a direction in the will, as in the instant case, that all of the debts of the testator be paid, this direction will negative the idea that the bequest was intended by the testator to be payment or a part payment of the creditor."

See Huston v. Huston, 37 Iowa 668; In re Shirley, 207 Wis. 549, 242 N. W. 207, 86 A. L. R. 1, and annotation. We will assume that in this case the legacies to claimants were greater than the debt and was of the same nature and as beneficial as the debt. In this case the testatrix directed in paragraph one of her will that all her debts be paid. In paragraph five she bequeathed all of her personal property to the beneficiaries with directions that it be divided equally between them "after paying my just debts." The indebtedness of testatrix to claimants was unliquidated and a substantial portion thereof was incurred after the will was made. We hold that, under the circumstances, the presumption was rebutted, the legacies cannot be deemed a satisfaction of the claims, that testatrix intended the legacies as a bounty and not as a satisfaction of the debts and the court erred in submitting this defense to the jury.

III. The principal contention of objectors is that the court erred in overruling their motion for a directed verdict and they are entitled to an affirmance though prejudicial errors were committed against appellant. If the trial court erred in overruling objectors' motion for directed verdict, subsequent errors committed against appellant are nonprejudicial. Mulroney Mfg. Co. v. Weeks, 185 Iowa 714, 171 N. W. 36; Paulson v. Hanson, 226 Iowa 858, 285 N. W. 189. We are of the opinion that the trial court did not err in overruling objectors' motion for directed verdict directed against both claims. We will refer to the several propositions contained in the objectors' motion.

Objectors' first claim is that errors in the court's instruction or other errors are harmless because the claim of W. N. Graves, assigned to Florence Graves, was based solely upon an express oral contract and as the evidence failed to establish such contract claimant could not recover upon a quantum meruit. The petition for the allowance of the claim of W. N. Graves stated:

"That on or about September 1, 1921, the said May Hill orally stated to said W. N. Graves, in substance, that on account of her age and condition of health she was unable to attend to the management of the aforementioned real and personal property; that if he would do so she desired to have him

assume the active management of said real and personal property for her, to supervise the maintenance and repair of said properties, the renting of the same, collecting the income therefrom, keeping said properties insured, the taxes thereon paid and account to her for all receipts and disbursements in relation to all of said property, and to have general supervision and management of all of her property affairs; that she desired to have him perform such services for an indefinite period of time during her declining years; and that she would compensate him for such services according to the nature and extent thereof." The petition stated Graves agreed to manage the property.

We agree that the claim is based upon an express contract and that claimant cannot recover in quantum meruit. It is well established that if a cause of action is based on contract recovery may not be had if the proof offered in support thereof establishes a quantum meruit. Sammon v. Roach, 211 Iowa 1104, 235 N. W. 78; In re Estate of Oldfield, 158 Iowa 98, 138 N. W. 846. But we cannot agree with objectors' statement that claimant failed to introduce evidence of an express contract made by W. N. Graves with May Hill in 1921. Testatrix owned 12 business and residential properties in Logan, Iowa, a life estate in a theater building and 680 acres in Harrison county. James Davidson, a witness for appellant, who lived in one of the resident properties owned by decedent from 1919 until after her death in 1930, testified substantially as follows: In 1919 Mrs. Hill told the witness that she was getting old and did not feel capable of looking after all of her property and wanted the witness to recommend someone to look after it for her. The witness recommended W. N. Graves. In the fall of 1921 she told the witness that she had employed Mr. Graves to look after all of her property and that Mr. Graves would have the witness do all of the carpenter work. From 1921 to 1930 Mr. Graves had the witness do all the carpenter work on all of the properties. At the direction of Mr. Graves, the witness built two houses on property owned by decedent. Graves directed all repairs made on the properties by the witness from 1921 to 1930. Several times decedent told the witness she was well

pleased with the way Mr. Graves was taking care of her prop-
erties. She stated she did not know what she would do if it
was not for Mr. and Mrs. Graves and she said she expected to pay
them for their work.

Renters of the farms from 1921 to 1930 testified that all of
their transactions in the operation of the farms were with Mr.
Graves. All of the farm land was rented from 1921 to 1930 and
their operations were under his supervision. We cannot agree
with the statement of objectors that appellant's evidence
tended only to prove claimant's right to recover in quantum
meruit, that the many services performed by Graves during the
ten-year period were at the special instance and request of
Mrs. Hill, or with her consent and knowledge. We conclude
there was sufficient evidence of an express agreement made
in 1921 for the management of the property for an indefinite
period and that Graves performed the agreement for a period
of about ten years to take the case to the jury.

IV. Nor can we agree with objectors' contention that
claimant failed to introduce any evidence from which the jury
could determine the value of the services rendered by W. N.
Graves. Objectors, in argument, stress the provision in the
express contract that Mrs. Hill would compensate Graves for
the services performed "according to the nature and extent
thereof" and urges that because of this provision claimant in
order to recover was required to enumerate and show the value
of each specific act and service performed by him under his
contract to manage the property. We do not so construe the
quoted words. The words "nature and extent thereof" refer
to the nature and extent of services called for and described in
the express contract, that is, Mrs. Hill agreed to compensate
Graves for supervising and managing her property affairs for
an indefinite period. Each of the many services performed by
Graves during the ten-year period were not performed at the
special instance and request of Mrs. Hill. They were performed
under his contract to manage the property for an indefinite
period. Witnesses for claimant who were familiar with all of
the property testified that the reasonable value of supervising
and managing the property was from $500 to $600 per year.
The value of the services was for the jury.

**198**

■ V.  Another proposition urged by objectors in their motion for a directed verdict is that the two notes given by Graves to decedent in 1929 and 1930 constituted as a matter of law a mutual settlement of all indebtedness between the parties.  While the giving of a promissory note creates a presumption of the settlement of existing demands between the parties, it is not conclusive and may be met by proof tending to overcome the presumption.  Riggs v. Gish, 201 Iowa 148, 205 N. W. 833; Danes v. Slitor, 118 Iowa 81, 91 N. W. 817.

After the notes were given, testatrix and Davidson had the following conversation a few months before her death:

"I spoke to her and I says: 'Mrs. Hill you are not so nervous as you was.'  She says: 'I feel lots better.  I am taking my money out of the bank and loaning it out and getting interest on it and she went on saying that she loaned Mr. Graves $2,500 to use in his business.' "  This issue, under the record, was for the jury.

■ VI.  We turn now to the claim of Florence Graves for compensation for personal services rendered to decedent.  Her petition states:

"That on or about date of April 12, 1921, the said May Hill orally requested Florence Graves ,in substance, that she undertake then and continuously thereafter for an indefinite period of time to perform services from time to time as requested or necessary for the aid, care, comfort and pleasure of said May Hill, during her declining years, and further stated to said Florence Graves, in substance, that she would compensate her for such services according to the nature and extent thereof."

Objectors contend that the petition was based on an express contract and as no evidence was introduced to prove such contract there was a fatal variance between the allegations of the petition and the proof and their motion for directed verdict should have been sustained.  We agree with objectors that the pleading is based on an express contract.

While there is no direct evidence of an express contract we are of the opinion that the evidence leads necessarily to the conclusion that there must have been an express agreement that

Mrs. Graves would perform services when requested by Mrs. Hill. Mr. and Mrs. Graves lived next door to Mrs. Hill from prior to 1921 until the death of Mrs. Hill in 1930. From 1921 to 1930 Mrs. Hill was frequently in ill health and was eccentric. Without setting out the evidence in detail, it is sufficient to say that Mrs. Graves more or less continuously during said period performed services for Mrs. Hill such as nursing, housework, furnishing meals, accompanied her on shopping trips, etc.

Dr. Kennedy stated that Mrs. Hill suffered from arthritis, was her physician from 1921 until her death in December 1930 and saw her at frequent intervals during that period. He testified:

"In connection with my solicitude that the patient (Mrs. Hill) should be cared for, that any little comfort or necessary want, or attention should be provided for, I talked with Mrs. Hill, in that connection, as to the services that Mrs. Graves was rendering for her. On one occasion she said: 'I will be all right. I will put a light in the window and Mr. and Mrs. Graves have their room on the north side of the house and they will see if I am in distress or needing.' Mrs. Hill had no way of assistance excepting as my professional assistance or this neighborly interest or I don't remember that she had any hired help in the home at any time. I don't recall seeing anyone about the house administering to her other than Mrs. Graves during the period from 1921 to the time of her death. I observed Mrs. Graves doing things for her and frequently in connection with my professional calls and what I offered to have done and what I felt May Hill was needing at that time, to be looked after, she always said Mrs. Graves would look after her; that if she (Mrs. Hill) needed anything, she was looking after it. * * *

"In the year 1930 there was a period of about eight months in which, to my personal knowledge, Mrs. Hill had the services of Florence Graves. * * * Mrs. Graves was personally in attendance from the time of her return from Cuba until the time of her death. In the year 1929 she had probably thirty to sixty days intermittent, irregular sickness which Mrs. Graves personally attended Mrs. Hill. In the year 1927 Mrs. Hill had quite a sick spell which covered a period of approximately

ninety days at which Mrs. Graves personally attended Mrs. Hill. In the year 1928 there were probably ten to fifteen days of illness in which Mrs. Hill was attended by Mrs. Graves. In the year 1929 there were ten, fifteen or twenty days during that year of illness of May Hill in which she had the services of Florence Graves. In the year 1926 Mrs. Hill had a decided sick spell in September and October that continued from September 9th until after October 22nd, about sixty days. In the year of 1924 Mrs. Graves attended Mrs. Hill in a spell of illness for thirty days.'' The witness then testified that the fair and reasonable value of the services of Mrs. Graves to Mrs. Hill was $1,000.

Neither Mr. nor Mrs. Graves was related to Mrs. Hill. We are of the opinion that Mrs. Graves did more than to perform services with the knowledge and consent of Mrs. Hill, or at her special request. The services were so continuous and extensive and of such a character that it can fairly be said that they were performed under the pleaded contract made in 1921 that Mrs. Graves would undertake to perform services for an indefinite period for Mrs. Hill for her aid, care and comfort whenever requested to do so. The following statement in In re Estate of Oldfield, 158 Iowa 98, 100, 138 N. W. 846, 847, is applicable to this case:

''It is the rule in this state that, where the pleadings are based on an express agreement alone, no recovery can be had on a quantum meruit. Hunt v. Tuttle, 125 Iowa 676; Leonard v. Leonard, Adm'r, 134 Iowa, 131.

''Direct evidence of such an agreement for employment is not necessary, however. If from all of the facts and circumstances appearing in the case it can fairly be said that there must have been such an agreement, it is sufficient. * * *

''It is a general rule that the fact that one is found doing service for another is *prima facie* evidence of an employment. 26 Cyc. 1410; Perry v. Ford, 17 Mo. App. 212. And we think the circumstances surrounding the parties and their relationship as practical strangers raise the presumption that the plaintiff went to work for the deceased under an express agreement. It will be observed that there are no allegations in the petition that there

was an express agreement as to the compensation that should be paid for such services.''

There was sufficient evidence of an express contract with Mrs. Graves and the reasonable value of her services performed to take the case to the jury. The failure to fix the amount of the compensation in the express contracts did not invalidate them and recovery may be had on an implied contract to pay the reasonable value of the services.

In Scott v. Wilson, 185 Iowa 464, 468, 170 N. W. 761, 762, the opinion states:

''As to the second, we do not understand plaintiff to ask a recovery on a *quantum meruit*. It often happens that there is an express contract as to the employment, but no agreement as to the amount of compensation, in which case the law implies a promise to pay reasonable compensation. In re Estate of Old-field, 158 Iowa 98.'' Hall v. Luckman, 133 Iowa 518, 110 N. W. 916.—Reversed.

SAGER, GARFIELD, BLISS, MILLER, OLIVER, and WENNER-STRUM, JJ., concur.