IN RE ESTATE OF OLE HOLTA.

HANNAH HANSEN BORLAUG, claimant-appellee, v. JAMES E. O'DONOHOE, temporary administrator of estate of OLE HOLTA, deceased, ANNA FAIRMAN et al., appellants.

No. 48644.

(Reported in 68 N.W.2d 314)

528

FEBRUARY 8, 1955.

Larson & Carr, of Charles City, for appellants.

Donohue & Wilkins, of New Hampton, for appellee.

OLIVER, J.—Hannah Hansen Borlaug made claim against the estate of Ole Holta, deceased, for services of claimant and her husband, assigned to her, in caring for testator from October 13, 1949, until his death, September 20, 1953. Claimant was the executrix of the will and the claim was resisted by a special administrator and decedent's sister and nephews and nieces who were the residuary beneficiaries. Trial to the court resulted in allowance of the claim in the amount of $5950, and this appeal by the objectors.

Hannah was distantly related to decedent, Ole Holta. As a young man Ole came to Iowa from Norway in 1896 with Otto Hansen, from whom he learned the painting trade and with whom he worked. A number of years later Otto Hansen married Hannah. Ole maintained his headquarters and spent week ends at their home for approximately eighteen years. Some years later Ole retired and built a home in the village of Saude. He lived there until his death in 1953. He never was married. Otto Hansen died in 1941. His widow, claimant Hannah, lived on a one-hundred-acre farm which she owned.

In April 1947, at Ole's request, Hannah entered his home. She went there somewhat earlier than had been planned because he had injured his back and had no one to take care of him. He soon recovered. He was then seventy-seven years old. She was about fifty-one. When she came he had very little money on hand. However, he had an annual income of $3000 from corporation stocks. She had some money, an automobile, some furniture and a gross annual income of $500 from her farm. She brought her automobile and furniture to Ole's home. He bought a stove, a washing machine and a parlor suite for her. October 27, 1947, he opened a checking account upon which she drew checks for household expenses, etc. Her funds also were used for household expenses. She did the housework and washing, played cards with him and took him riding in her automobile.

In May 1947 he deeded the house to her and gave her the contents. In July 1947 he executed his will giving her a life

estate in his property. "He once in a while threatened to change his will, when he got mad * * *."

Claimant's work in caring for the home and Ole was not burdensome before October 13, 1949. On that date Ole suffered a broken hip. Thereafter he was totally disabled and required much nursing care and attention. He was unable to dress, bathe or shave himself and Hannah did these things for him during the remainder of his life. He "wanted lots of care, too." She was required to lift him in and out of bed many times each day and night and to help him to the table and to her automobile. He weighed about one hundred and eighty pounds. He was never again able to rise from a chair without assistance. He was able to use crutches only a few times to walk alone as far as the bathroom. She handled his affairs and even prepared his income tax reports.

October 14, 1950, Ole arranged an exchange of Hannah's automobile for a new car and payment of the difference, $1303.29. January 23, 1951, Hannah married Martin Borlaug. At Ole's request Martin came to live in the home. He was a carpenter and worked at that occupation for some time. He did repair work and painting on the house and paid for some of the groceries and household supplies. He also helped Hannah lift and move Ole. Some time before Ole's death Martin was required to give up his work and spend all his time assisting in caring for Ole.

Ole's condition progressively worsened. In April 1953 he lost his mental faculties and lost control of his bodily functions. Until his death he required the constant care of claimant and her husband. At times he was so violent one person was not able to control him. A doctor testified it would have been difficult to keep him in the hospital because of his excessive noise, the screaming, etc., and that "this man had excellent care in every way", at his home. The court ordered and adjudged the claim be allowed for $100 per month from October 13, 1949 to April 1, 1953, aggregating $4250 and for $300 per month for claimant and her husband from April 1 to September 20, 1953, aggregating $1700, making a total of $5950. It may be here noted Hannah made no claim for the two and one-half years she lived with Ole before he suffered the broken hip.

■    I.    Appellants contend claimant failed to show a mutuality of expectation Ole would pay her for her services. It is argued evidence she indicated this to Ole was essential. This argument overlooks the established rule that where one person performs services for another which are known to and accepted by the latter, the law implies a promise to pay therefor. In re Estate of Talty, 232 Iowa 280, 283, 5 N.W.2d 584, 586, 144 A. L. R. 859; In re Estate of Beck, 239 Iowa 655, 657, 32 N.W.2d 217, 218; Hopkins v. Convy, 191 Iowa 402, 404, 182 N.W. 225; In re Estate of Larsen, 235 Iowa 57, 62, 15 N.W.2d 919; In re Estate of Walton, 213 Iowa 104, 105, 106, 238 N.W. 577; In re Estate of Andrews, 245 Iowa 819, 826, 827, 64 N.W.2d 261, 266; 58 Am. Jur., Work and Labor, sections 3, 4 and 6. Here the promise to pay was implied and the absence of direct evidence that Hannah informed Ole of this was not a bar to the allowance of her claim.

■■    II.    Several witnesses testified to the value of the services performed by Hannah and Martin. It is contended none of them was competent. Martin had been employed as a practical nurse in a hospital for two years and had knowledge of the value of such services. The witness Julian Natvig had learned such value from his extended experience as overseer of the poor. The witness Rigler testified he was familiar with such value. Such a witness need not be an expert in the strict sense of the term. 32 C. J. S., Evidence, section 545f(2) and (3), pages 321, 322, 323.

In re Estate of Dvorak, 213 Iowa 250, 253, 236 N.W. 66, 67, in overruling such an assignment of error, stated: "The value of the services was testified to, and while not by witnesses who had proven themselves to have had a great amount of experience in such matters, nevertheless, there was some evidence in support of the value of the services."

We hold the witnesses were not incompetent and their evidence was sufficient to support the finding of the court fixing the value of the services.

III.    Appellants pleaded Hannah was fully compensated for her services by the furnishing of her living expenses, the conveyance to her of the home, an automobile furnished her by Ole (and a provision for her in Ole's will, which will be considered in a later division hereof). Upon appeal appellants have shifted

their position in part. They now contend the estate is entitled to credit for the house and for cash expended for several items, of which only the automobile was referred to in their answer. The trial court found the pleaded defenses had not been established. The burden was upon appellants to do this. See section 635.58, Code of Iowa, 1954; Kauffman v. Logan, 187 Iowa 670, 174 N.W. 366.

■ Appellants rely upon In re Estate of Willmott, 211 Iowa 34, 38, 230 N.W. 330, 332, 71 A. L. R. 1018, 1023, which holds, "that payments of money made by a debtor to an existing creditor, or made by one who is under obligation to pay to the receiver thereof, will be deemed presumptively to apply as credits upon the obligation, and not as gratuities or gifts." This rule was followed by In re Estate of Hollis, 235 Iowa 753, 757, 16 N.W.2d 599, 601.

Of course, such presumptions are rebuttable. The Willmott case concedes this and other decisions so hold. Gilmore v. Prior, 52 R. I. 395, 161 A. 137. See also In re Estate of Hill, 230 Iowa 189, 297 N.W. 278. The Willmott case points out, at page 39 of 211 Iowa, if decedent had not put herself under legal obligation to pay the full value of the services then the liberal payments of money could be deemed gifts of affection and gratitude, but, if by contract decedent became claimant's employer and had bound herself to pay fully for claimant's services, *"then she became debtor to the claimant as fast as such services accrued."* (Italics supplied.)

■ In the case at bar Hannah makes no claim for services rendered Ole prior to October 13, 1949, when he became totally disabled and required constant nursing attention. Ole was not her debtor when he conveyed the house to her nor for a period of almost two and one-half years thereafter. Hence, the foregoing reasoning in the Willmott case is not here applicable. (In this part of the discussion we have assumed, without so deciding, that the effect of a conveyance of real estate would be the same as the transfer of money.) Here the transfer was not from debtor to creditor.

Hannah testified on cross-examination: "Well, everything was there [furniture] was given to me with the house, that was

all mine." This tended to rebut the presumption the transfer was not a gift. Moreover, Ole's will, executed two months after the conveyance, expresses his appreciation and gratitude to Hannah and is more consistent with the contention the conveyance was a gift rather than the payment of a legal obligation.

· Under the record the question whether the conveyance of the house was a gift or a payment to a creditor was one of fact for the determination of the court. The court found the transaction was a gift. That finding is supported by substantial evidence and will not be disturbed upon appeal.

The foregoing reasoning is, in general, applicable also to the other transactions for which appellants claim credit upon appeal. These other items are evidenced by canceled checks from Ole's bank account, all of which were preserved and produced by Hannah. One item is for $1303.29 paid for the exchange, arranged by Ole, of Hannah's automobile for a new car. For almost three and one-half years her automobile had been used for family purposes and especially for the transportation of Ole for his benefit and entertainment. Her new car was used for the same purposes as long as Ole was able to ride. There is substantial evidence the payment by Ole was a gift but Ole may well have considered it a proper expense for his benefit. The record supports the conclusion of the trial court upon this phase of the case.

In the same category are payments of insurance on the automobile for two years. Apparently Hannah paid the insurance for the other years as well as the upkeep and operating expense of the car. Another credit claimed is for $500 paid for an oil furnace installed in the house. This was used for Ole's benefit and comfort and there is no showing it was unnecessary. The other questioned item is $97.99 for taxes on Hannah's farm. Hannah testified she had not received her $500 annual rental when these taxes fell due. "Sometimes he didn't have money and I could use mine for things for the house again when I got it." She testified they were living there together and she was "supposed" to use this money for her expenses and his expenses. An example of this was shown when she took Ole to Rochester for an eye operation. She wrote a check for their expenses while

there and used some of her own money also. There is no evidence suggesting she was ever unfaithful to her trust. We may observe the record shows no objections, under the dead man statute, section 622.4, Code of Iowa, 1954, to the competency of Hannah. Furthermore, much of her testimony was elicited by appellants in her cross-examination.

The record does not show the estate is entitled to credit for any of the three items last considered.

IV. Ole Holta's will provides:

First: That all just debts be paid.

Second: For a suitable monument at his grave.

"Third: I will, devise and bequeath unto Hannah Hansen the use and income of all property, both real and personal, of every kind, character and description of which I may die seized, she to have the use and income therefrom for and during the term of her natural lifetime. This bequest is made to the said Hannah Hansen in appreciation of the fact that I resided in the home of her husband and herself for a period of eighteen years and at the present time, in my old age, she has consented to look after my welfare and I wish in this manner, as far as possible, to show my appreciation for what she is now doing for me and I consider the further fact that I have not been in close contact with any of my brothers or sisters or their children for a period of approximately twenty-five years and do not know the whereabouts of some of them at this time."

Fourth and Fifth: Subject to the life estate, $500 to a church and $500 to a college.

Sixth: The remainder to a sister and a niece and the children of a deceased brother if the latter are living and can be found.

The life estate given Hannah consisted of corporation stocks, paying dividends of about $3000 per year. Appellants contend it was the intention of testator, as expressed in the will, to give this to Hannah as compensation for her taking care of him and that, having elected to take under the will, she should not have been allowed additional compensation for her services.

There is a rule of construction, known as the doctrine of satisfaction, that, where a legacy is given a creditor by his

debtor, equal to or greater in amount than the debt, it will be presumed, in the absence of anything to indicate a contrary intention, and subject to certain exceptions, that the testator intended the legacy to be in satisfaction of the debt. The presumption is not conclusive and as a general rule slight circumstances will rebut it. In re Estate of Hill, supra, 230 Iowa 189, 297 N.W. 278, and citations; Mitchell v. Vest, 157 Iowa 336, 136 N.W. 1054; Huston v. Huston, 37 Iowa 668; Page on Wills, Third Ed., section 1572; 57 Am. Jur., Wills, sections 1574 and 1575; 86 A. L. R. 6, annotation. Some circumstances, listed in In re Estate of Hill, supra, 230 Iowa 189, 194, 297 N.W. 278, 280, as preventing the operation of the rule, are: "(1) A direction in the will for payment of debts, (2) an unliquidated indebtedness, (3) an indebtedness contracted after making the will." Each of these circumstances exists in the case at bar.

Where testator expressly declares a bequest is in satisfaction of a debt it will so operate, if accepted. 57 Am. Jur., Wills, section 1576. This was the holding in In re Estate of Woodfin, 232 Iowa 1013, 6 N.W.2d 859, in which the will gave Gunda Stephensen $1500 " 'on the condition that she care for me during my declining days. In case she is not able to do so I direct that this sum' " be divided among certain others. That bequest was clearly made in consideration of services and was conditioned upon their rendition.

As stated in Page on Wills, Third Ed., section 1575: "On the other hand, the testator may state his purpose in making a gift as being in appreciation for certain services without showing an intent that the gift shall be in satisfaction of a debt, the gift in such case being an additional bounty."

Here the will gives the life estate to Hannah " 'in appreciation of the fact' " testator had lived in her home for eighteen years and at the present time, in his old age, she had consented to look after his welfare, and he wishes in this manner to show his appreciation for what she was "now" doing for him and he considered the further fact he had not been in close contact with any of his brothers or sisters or their children for twenty-five years.

Appellants rely upon Holmes v. Connell's Estate, 207 Mich. 663, 665, 175 N.W. 148, 149, in which the will recited: " 'Mrs.

Holmes has been my housekeeper and companion for years, and this bequest is given as a token of my regard and appreciation of her services.' " The court used the definition of appreciation to " 'estimate justly' or to set a price or value on." In that case, however, the allowance of the claim and the gift would have practically exhausted the estate and left little to satisfy other provisions of the will. The court stated on page 666, "Had the estate been a large one, plaintiff's contention would be more plausible, * * *." In the case at bar the estate consists of stocks valued at $50,000, the amount owed Hannah is not relatively large and the allowance does not defeat any other provision of the will. See Hollister v. Old Colony Trust Co., 328 Mass. 225, 102 N.E.2d 770.

In Thurn v. Goetz, Ohio Prob. Ct., 88 N.E.2d 582, 583, a bequest of $5000 " 'in consideration and in appreciation of her faithful services' " was held not to cancel or pay claims of the beneficiary for services. The decision cites McNeal v. Pierce, 73 Ohio St. 7, 75 N.E. 938, 1 L. R. A., N. S., 1117, 112 Am. St. Rep. 695, 4 Ann. Cas. 71, in which a headnote states, "A legacy reciting that it is 'in consideration of her care for my invalid mother * * * and also her care of my infant son' does not imply a debt, but a bounty." Strong v. Williams, 12 Mass. 391, 7 Am. Dec. 81, discusses the doctrine and its application in a number of earlier analogous decisions.

■ The word "appreciation" has various meanings, depending largely upon the context. Here the use of the word with reference to hospitality extended to testator many years previously and Hannah's having " 'consented to look after my welfare' " should not be considered as meaning to estimate justly or to set a price or value for services in nursing testator, which started more than two years thereafter when he became disabled as the result of an accident. Support for this interpretation is afforded by the explanatory statement, in the paragraph, that none of testator's immediate relatives was close to him. Had the provision for Hannah been the payment of a debt it is a fair inference that an explanation so stating, if any were deemed advisable, would have been made. The explanation actually made was that the welfare and care of Hannah was paramount to the others.

Under the circumstances shown in the record we are satisfied the court did not err in interpreting the language in question as meaning an expression of gratitude and a bounty rather than as payment for nursing services to be rendered.—Affirmed.

All JUSTICES concur.