**Carl H. CARLSON and Mack Hyndman, d/b/a Carlson-Hyndman Construction Company, Appellants,**

**v.**

**Norman E. MAUGHMER and Bette T. Maughmer, Appellees.**

**No. 53499.**

Supreme Court of Iowa.

June 10, 1969.

Pendleton & Pendleton, Storm Lake, and Maher, Meloy & Hankens, Cherokee, for appellants.

Herrick, Ary & Cook, Cherokee, for appellees.

GARFIELD, Chief Justice.

This is an action in equity by Carlson and Hyndman, carpenters, to establish and foreclose a mechanic's lien for $3343.11

against a dwelling they built under an oral contract for defendants Maughmer and wife in Cherokee. The principal controversy is whether it was agreed at the outset the total cost of the home exclusive of the lot would not exceed $24,326.96, the figure plaintiffs submitted to defendants as the cost. (Counsel and witnesses frequently referred to the figure as $24,000.00.)

Plaintiffs maintain the above amount was merely an estimate, not a firm bid which would not be exceeded. The trial court held, however, as defendants contend, plaintiffs agreed the cost would not exceed the named amount and did not adhere to the agreement. Relief was denied and plaintiffs have appealed.

The petition alleges plaintiffs and defendants entered into an oral agreement under which the former would furnish materials and labor for construction of the dwelling and defendants agreed to pay therefor; plaintiffs complied with their part of the agreement and furnished the materials and labor shown on the itemized statement attached to the petition and their affidavit claiming a mechanic's lien; "they were furnished at the respective prices shown on the statement and said prices are the reasonable prices and values thereof."

Defendants' answer admits plaintiffs have furnished the agreed services and have filed a verified statement of their demand but denies the accuracy thereof; alleges plaintiffs have been paid in full and, in some detail, that they agreed the total cost would not exceed the $24,000 and they claimed no additional sum until after the dwelling was completed.

I. It is clear the vital questions on this appeal are factual. Before briefly reviewing the evidence on the questions, we may observe plaintiffs appear to have proceeded on the theory there was an express oral agreement except as to the amount defendants were obligated to pay for construction of the dwelling.

The rules of law plaintiffs seek to invoke are stated in Sitzler v. Peck, Iowa, 162 N.W.2d 449, 451, decided more than nine months after the trial court's decision here. We quote from the cited opinion:

"I. It is well settled that there cannot be an express contract and an implied one relating to the same subject matter and covering *all* its terms. Maasdam v. Estate of Maasdam, 237 Iowa 877, 887, 24 N.W.2d 316, 321; Lautenbach v. Meredith, 240 Iowa 166, 168, 35 N.W.2d 870, 871.

"We have held many times that one who pleads an express oral contract alone cannot ordinarily recover upon an implied contract or quantum meruit. Guldberg v. Greenfield, 259 Iowa 873, 878, 146 N.W.2d 298, 301, and citations; In re Estate of Hill, 230 Iowa 189, 200, 297 N.W. 278, 283; Hunt v. Tuttle, 125 Iowa 676, 101 N.W. 509.

"However, it is equally well settled that there may be an implied contract on a point not covered by an express one. Lautenbach v. Meredith, supra; Maasdam v. Estate of Maasdam, supra; In re Estate of Hill, supra.

"It often happens that there is an express contract as to the employment, but no agreement as to the amount of compensation, in which case the law implies a promise to pay reasonable compensation. In re Estate of Oldfield, 158 Iowa 98, 138 N.W. 846; Scott v. Wilson, 185 Iowa 464, 468, 170 N.W. 761, 762. Also see Finkle v. Finkle, 239 Iowa 783, 32 N.W.2d 807."

Although the petition alleges, as previously stated, the materials and labor "were furnished at the respective prices shown on the statement" for the lien, we will assume in plaintiffs' favor it sufficiently invokes the doctrine of implied contract that defendants would pay the reasonable value thereof, since there is added to the quoted language the statement "said prices are the reasonable prices and values thereof."

In any event, plaintiffs had the burden to prove the contract declared upon by them. Lautenbach v. Meredith, supra,

240 Iowa 168, 170, 35 N.W.2d 870, 871 and citations. See also Rule 344(f), par. 5, Rules of Civil Procedure. Plaintiffs tell us the cited case is quite similar to the present one. However, we do not regard the question as to where the burden of proof lay as vital on this appeal.

II. While our review in this equity case is de novo, especially when considering the credibility of witnesses, we give weight to the fact findings of the trial court but are not bound by them. Rule 344(f), par. 7, R.C.P. If we are to observe this rule here we are not justified in reversing the trial court.

III. In the fall of 1965 defendants were newcomers to Cherokee. They bought a lot there for $4500 on which they desired to build a home. Mr. Maughmer arranged for a loan of $24,000 from a savings and loan association in Storm Lake (a little more than 20 miles from Cherokee). Mrs. Maughmer had obtained a set of plans from a Kansas City newspaper and roughly modified them to suit her. Defendants submitted these plans to plaintiffs who reported they were not sufficiently detailed for them to bid on and the house shown by them could not be built for less than $27,-000 to $28,000. Defendants informed plaintiffs they didn't have "that kind of money to put into a house" and they'd have to stay within their limits of around $24,000.

Plaintiffs then asked and defendants told them what they wanted in their home; plaintiffs also asked and defendants consented that the former draw plans of a house they thought they could build for $24,000; plaintiffs submitted plans drawn by them which defendants approved; plaintiffs submitted the plans to various subcontractors and obtained firm bids from them as to the cost of lumber and other materials, concrete and brick work, plumbing and heating, electrical work and floor covering. Plaintiff Hyndman, who dealt with defendants more than his associate Carlson, testified these subcontractors were told to submit a firm bid for their part of the work because there was just so much money available with which to build.

After obtaining bids from the different subcontractors and figuring their own labor and that of their employees, plaintiffs submitted to defendants the figure of $24,326.96 as the total cost of constructing the home shown in the plan plaintiffs prepared; Mr. Maughmer requested plaintiffs to enter into a written contract to build the house for the amount submitted but they declined. Maughmer testified he asked plaintiffs "All right, can you build a house for this amount?"; they said they could and "I trusted them that they could."

Plaintiffs thereupon proceeded with the construction. In November or December 1965, the basement was excavated, the foundation built and capped until warmer weather arrived and construction was resumed. It is admitted that in building the house no material changes in the plans plaintiffs prepared were made by them or any subcontractor that would add to the cost.

At least every two weeks during the period of construction Mr. Maughmer, sometimes with his wife, asked Mr. Hyndman, who was in charge of the job and to whom subcontractors sent statements of what was due them, if the job was progressing within the figure plaintiffs submitted as the total cost. In each instance defendants were assured plaintiffs were keeping within such figure "and everything was coming along as they planned."

In May, 1966 Mr. Hyndman and a salesman for kitchen cabinets asked Mrs. Maughmer to select the ones she preferred. Construction was then in the later stages. The cabinets Mrs. Maughmer liked best were of the more expensive kind and she remarked perhaps she'd better select less expensive ones. However, she was told she'd probably be happier with the more expensive ones and construction costs were staying well within the limit (i. e., the $24,000).

Defendants moved into their new home August 4 or 5, 1966. They were first informed in a statement dated August 27, received about September 1st, plaintiffs were claiming an additional amount for which their lien statement was later filed and this suit was later brought. Until then defendants had not been told any sum in addition to the $24,000 would be claimed from them. Part of this additional amount is accounted for by the fact plaintiffs raised the hourly price of their labor in 1966 from $3 to $3.-25 without advising defendants. Another part is a charge of $800 for use of plaintiffs' tools regarding which they had not informed defendants, although Mr. Hyndman testified they told defendants they'd have "a little bit of expense besides our hourly wage."

IV. Asked to account for his assurance to Mrs. Maughmer when the cabinets were selected, Mr. Hyndman testified "Well, I think it was probably an error in the estimate. * * * Well, like I said, the error was in the estimate." Plaintiffs say in argument here a mistake was made in calculating the cost and argue, in effect, defendants should bear the additional resulting cost.

The argument cannot be accepted. There was no issue in the trial court of mistake in calculating the cost of constructing the dwelling and it cannot be raised for the first time here. Neibert v. Stone, 247 Iowa 366, 367–368, 73 N.W.2d 763, 764 and citations; Associates Discount Corp. v. Held, 255 Iowa 680, 684, 123 N.W.2d 869, 871 and citations.

Further, it is not suggested anyone other than plaintiffs made the mistake if there was one. No claim of mutual mistake is made here. See Bakke v. Bakke, 242 Iowa 612, 616, 47 N.W.2d 813, 816 and citations.

V. In order for plaintiffs to recover the reasonable value of the services performed by them it is obvious they must prove what such value is. Without discussing the matter at length, we are satis-

fied their proof is insufficient on this issue. And we do not overlook the testimony of the witness Bakker.

Affirmed.

All Justices concur, except STUART, J., who takes no part.